UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

KENDYSUE A. NAU,

                               Plaintiff,

v.

NANCY A. BERRYHILL,
ACTING COMMISSIONER OF THE
SOCIAL SECURITY ADMINISTRATION

                               Defendant.

**DECISION AND ORDER**

1:17-CV-00703(JJM)

---

        This is an action brought pursuant to 42 U.S.C. §§405(g) and 1383(c)(3) to review the final determination of defendant Nancy A. Berryhill, the Acting Commissioner of Social Security, that plaintiff was not entitled to Disability Insurance Benefits ("DIB") or Supplemental Security Income ("SSI"). Before the court are the parties' cross-motions for judgment on the pleadings [11, 16],[1] which the parties have consented to be addressed by me [17]. Having reviewed the parties' submissions [11, 16, 18], plaintiff's motion is granted and the Acting Commissioner's motion is denied.

**BACKGROUND**

        In July of 2013 plaintiff, who was 49 years old, filed applications for DIB and SSI, alleging a disability onset date of January 1, 2006 (later amended to September 29, 2013), due to a cyst on her wrist, high blood pressure, hepatitis C, and a right foot injury. Administrative record [7], pp. 9, 146, 153, 202

---

[1]     Bracketed references are to the CM/ECF docket entries. Unless otherwise indicated, page references are to numbers reflected on the documents themselves rather than to the CM/ECF pagination.

After plaintiff's claims were initially denied (id., pp. 71-76), an administrative hearing was held on February 10, 2016 before Administrative Law Judge ("ALJ") Robert T. Harvey, at which plaintiff, who was represented by counsel, and a vocational expert testified. Id., pp. 34-55. In his March 14, 2016 decision, ALJ Harvey determined that plaintiff's severe impairments were "post excision of the right volar radial wrist ganglion and mild right foot osteoarthritis" (id., p. 11), and assessed plaintiff with the residual functional capacity ("RFC") to perform medium work with the following limitations: "cannot work in areas with unprotected heights or around heavy, moving or dangerous machinery[, or] . . . . in areas where she would be exposed to cold or dampness", unable to "climb ropes, ladders or scaffolds", and "has occasional limitations in the repetitive use of the right wrist". Id., p. 12.

In reaching that RFC, ALJ Harvey afforded "some weight" to the September 11, 2013 consultative opinion of Donna Miller, D.O., who concluded that plaintiff had a "mild limitation for repetitive motion of her right wrist". Id., pp. 14, 353. An x-ray was taken of plaintiff's right foot in connection with her consultative examination, but Dr. Miller found "no significant abnormality". Id., p. 353. ALJ Harvey also detailed the March 25, 2015 physical RFC Questionnaire completed by Michael D. Calabrese, M.D., who began treating plaintiff in January 2015. Id., p. 15. Dr. Calabrese diagnosed plaintiff with lumbar spine "disc disease" and with arthritis in both hands. Id., p. 411 He also identified plaintiff's symptoms as chronic pain and fatigue, and noted that the Tramadol and Cyclobenzapine she was taking caused drowsiness, dizziness and gastrointestinal upset. Id.

As a result of her impairments, Dr. Calabrese assessed plaintiff with a variety of limitations, including that she sit three hours or less in an eight-hour workday, stand and walk for less than two hours in an eight-hour workday, stand for no more than 15 minutes before needing

to sit, and use her right hand and fingers "to grasp, turn and twist objects and her fingers for manipulative activities" for less than 10% of a workday. Although ALJ Harvey did not expressly assign a weight to that opinion, he did not adopt any of its findings, and in explaining that there was "scant evidence" of plaintiff's "alleged lumbar spine disease", he noted that Dr. Calabrese's functional assessment was "based largely on lumbosacral disc disease", but that there was "no imaging of the lumbar spine in the record", "no physical therapy notes", "no evidence of any significant treatment for back pain, and . . . only [a] few complaints". Id., p. 16.

Based on plaintiff's RFC and the vocational expert's testimony, ALJ Harvey concluded that there were sufficient jobs in the national economy that plaintiff could perform, and therefore was not disabled. Id., pp. 16-18. The Appeals Council denied plaintiff's request for review (id., pp. 1-4), and thereafter plaintiff commenced this action.

## ANALYSIS

**A. Standard of Review**

"A district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by 'substantial evidence' or if the decision is based on legal error." Shaw v. Chater, 221 F.3d 126, 131 (2d Cir. 2000) (*quoting* 42 U.S.C. §405(g)). Substantial evidence is that which a "reasonable mind might accept as adequate to support a conclusion". Consolidated Edison Co. of New York. Inc. v. NLRB, 305 U.S. 197, 229 (1938).

It is well settled that an adjudicator determining a claim for Social Security benefits employs a five-step sequential process. Shaw, 221 F.3d at 132; 20 C.F.R. §§404.1520,

416.920.   The plaintiff bears the burden with respect to steps one through four, while the Acting Commissioner has the burden at step five.  Talavera v. Astrue, 697 F.3d 145, 151 (2d. Cir. 2012).

Plaintiff moves for the action to be remanded for further administrative proceedings by arguing that ALJ Harvey improperly relied on the stale opinion of Dr. Miller, the consultative examiner, resulting in a finding not supported by substantial evidence.  Plaintiff's Memorandum of Law [11-1], pp. 13-17.   She also argues that ALJ Harvey erred by "fail[ing] to indicate what weight, if any, he accorded [Dr. Calabrese's] opinion or provide any rationale for why he did or did not believe the opinions", and that by rejecting that opinion, he was left only with his lay interpretation of the evidence to support his RFC finding  Id., pp. 17-19.  In response, the Acting Commissioner argues that Dr. Miller's opinion was not outdated, that ALJ Harvey sufficiently explained why he discredited Dr. Calabrese's opinion, and that ALJ Harvey's opinion was otherwise supported by substantial evidence. Acting Commissioner's Brief  [16-1], pp. 14-25.

**B.    Did ALJ Harvey Improperly Rely on Dr. Miller's Opinion?**

"The mere passage of time does not render an opinion stale. Instead, a medical opinion may be stale if subsequent treatment notes indicate a claimant's condition has deteriorated." Whitehurst v. Berryhill, 2018 WL 3868721, *4 (W.D.N.Y. 2018).  Here, in connection with plaintiff's 2013 consultative examination, Dr. Miller had an x-ray conducted of her right foot, which revealed "[n]o significant bony abnormality". [7], pp. 353, 354. However, plaintiff's complaints of foot pain continued. For example, on February 26, 2014 podiatrist James Burruano, DPM,[2] diagnosed plaintiff with fasciitis and a stress fracture in the

---

[2]    Although not indicated in his treatment note, the Acting Commissioner identifies him as a podiatrist. Acting Commissioner's Brief [16-1], p. 7.

heel. Id., p. 380-383. An August 2015 MRI of her right foot revealed a 9 mm plantar calcaneal spur (id., p. 364), demonstrating that plaintiff's condition had progressed from the x-ray conducted at the time of her consultative examination approximately two years earlier. Dr. Calabrese similarly noted in February 2016 that plaintiff had a right foot spur confirmed by a positive x-ray. Id., p. 422.

Thereafter, plaintiff's lumbosacral disc disease became symptomatic (id., pp. 374, 384, 422), further showing the staleness of Dr. Miller's consultative examination. *See* Hawkins v. Colvin, 2016 WL 6246424, *3 (W.D.N.Y. 2016) ("the consultative medical examination report was 'stale' at the time of the ALJ's decision, insofar as the report was issued prior to Plaintiff's degenerative disc disease becoming symptomatic"). A stale opinion such as this does "not constitute substantial evidence to support an ALJ's findings", and remand is required for an updated assessment. Majdandzic v. Commissioner of Social Security, 2018 WL 5112273, *3 (W.D.N.Y. 2018).

**C.      Did ALJ Harvey Properly Evaluate Dr. Calabrese's Opinion?**

"Although the conclusions of a consultative examiner may override those of a treating source . . . an ALJ should use care before relying too heavily on the findings of a one-time consultant". Morales v. Berryhill, 2018 WL 679566, *16 (S.D.N.Y.), adopted, 2018 WL 679492 (S.D.N.Y. 2018); Selian v. Astrue, 708 F.3d 409, 419 (2d Cir. 2013) ("caution[ing] that ALJs should not rely heavily on the findings of consultative physicians after a single examination"). Nevertheless, "internal inconsistencies, and the conflicting opinions of other examining physicians, where supported by evidence in the record, can constitute substantial evidence to support not according the treating physician's opinion controlling weight, as well as

good reasons to attribute only limited weight to that opinion." Tricarico v. Colvin, 681 Fed. App'x 98, 101 (2d Cir. 2017) (Summary Order); Caruso v. Colvin, 2016 WL 1170909, *2 (D. Conn. 2016) ("an ALJ is not inextricably bound to the opinion of a treating physician and may deviate from such opinion - and accord more weight to a non-treating physician - if, among other things, the opinion is not consistent with other, substantial evidence of record").

Where an ALJ declines to give controlling weight to a treating physician's opinion, he must provide "good reasons" for doing so, and must consider the following factors in determining the weight to afford to the opinion: the nature of the examining relationship; whether or not the medical opinion was made by a treating source; the length of treatment relationship and the frequency of examination; supportability; consistency; specialization; and any other factors "which tend to support or contradict the opinion". 20 C.F.R. §404.1527(c).

Here, ALJ Harvey made no express assessment of the weight he afforded to Dr. Calabrese's functional assessment. Nor is it evident that he properly evaluated that opinion. Though ALJ Harvey did appear to assess that portion of Dr. Calabrese's functional assessment that related to plaintiff's lumbar spine, Dr. Calabrese also assessed plaintiff with the capacity to use her right hand and fingers in certain respects less than 10% of a workday ([7], p. 413) – an opinion that ALJ Harvey ignored.

Moreover, among the reasons for why he rejected any limitations associated with plaintiff's lumbar spine disease, ALJ Harvey explained that "[t]here is no imaging of the lumbar spine in the record". Id., p. 16. However, Dr. Calabrese stated that plaintiff's lumbar spine "disc disease" was supported by a positive x-ray. (id., p. 422), and although the x-ray does not appear to be part of the record, ALJ Harvey should have attempted to obtain that record before rejecting

the treating physician's opinion on that basis. Therefore, on remand, the ALJ should also properly evaluate the February 4, 2016 opinion of Dr. Calabrese.

## CONCLUSION

For these reasons, plaintiff's motion for judgment on the pleadings [11] is granted to the extent that this case is remanded to the Acting Commissioner for further proceedings consistent with this Decision and Order but is otherwise denied, and the Acting Commissioner's motion [16] is denied.

**SO ORDERED**.

Dated: November 15, 2018

/s/ Jeremiah J. McCarthy
JEREMIAH J. MCCARTHY
United States Magistrate Judge